## CIRCUIT COURT OF FAIRFAX COUNTY

Mohanty

v.

Goodman Homes

August 14, 1992

Case No. (Law) 106465

BY JUDGE THOMAS S. KENNY

This is before the court on the issue I took under advisement at the June 8, 1992, trial. The issue, which was thoroughly briefed by both parties, is whether the Mohantys untimely voided the sales contract under § 11–2.3 of the Code of Virginia (1950 as amended) after failing to go to settlement on September 26, 1989, or whether they are estopped from voiding the contract by their alleged misrepresentation and concealment. For the reasons set forth below, the Court finds that the Mohantys did timely raise the § 11–2.3 voidance and are not estopped from so doing.

The Mohantys brought this action to recover a security deposit that they paid to Goodman Homes pursuant to a sales agreement dated August 9, 1989, and signed on or about August 13, 1989. Goodman Homes was to build a custom home for the Mohantys. According to the sales agreement, the buyers:

> represent to Sellers . . . that Buyer has the financial ability and means to pay the purchase price to Seller with Buyer's own assets, and/or with the use of proceeds which might be obtained from a trust loan from a lending agency or institution. (Paragraph 4(a) page 2 of the Sales Agrement).

Thus, this is not a case, as in many contracts for the purchase of a home, in which the purchase was made contingent on the sale of an existing home. In fact, Goodman Homes asserts that it was its specific intention that the contract not be based on such a contingency. However, the Mohantys allegedly had intended to obtain funds for

their new home by selling their existing home. When they were unsuccessful in doing so, they sent a letter, after the proposed settlement date, to Mr. Goodman, the managing partner of Goodman Homes, in which they stated their intent to exercise their option to void the contract under § 11–2.3 of the Code of Virginia (1950, as amended). That section, which was repealed as of July 1, 1991, allows buyers to void contracts for "the sale of improved real estate which do not require completed performance within two years."

The Mohantys asked that their earnest money deposit, which totalled more than $130,000, be returned to them. When Goodman Homes refused to return the monies, the Mohantys instigated the instant action, to which Goodman Homes raised a counterclaim alleging three counts of fraud and one count of breach of contract.

The Court found at the trial of this matter on June 8, 1992, that the Mohantys committed no fraud; that there were no contingencies in the contract for financing or for the sale of the Mohantys' current home; that, but for § 11–2.3, the Mohantys would be in breach of contract; and that the contract did not require, even implicitly, that settlement occur within two years. I reserved ruling on whether the § 11–2.3 voidance was timely raised.

I have concluded that the § 11–2.3 voidance was not untimely raised. The Mohantys had an absolute statutory right to void the contract. The voidability of the parties' contract would only expire upon ratification, and the contract was never ratified. Thus, the Mohantys were under no duty to do anything until Goodman Homes would attempt to force the Mohantys to settle. There is no time limit in § 11–2.3 stating by what date a purchaser must declare the contract void. *Purvis, et al. v. Century Oak SFD General Partnership,* 23 Va. Cir. 82 (1991).

The statute creates a bar to Goodman Homes' recovery. However, though the outcome for Goodman Homes may be harsh, it must be remembered that the statutory bar could have been completely avoided if Goodman Homes had simply included language within the contract to meet the two-year completion date requirement.

The Mohantys are not estopped to void the contract because of alleged misrepresentations and concealments. Goodman Homes alleges that the Mohantys "represented on numerous occasions before and after the August 9, 1989, execution date of the contract that they had the ability to pay the agreed-upon purchase price of the home with their own assets or with the proceeds from a trust loan." Def.

Post-trial memorandum, page 3. Goodman Homes alleges that the "Mohantys never gave Goodman Homes any reasons to believe that they could not fulfill the contract." *Id.* page 5. Goodman Homes is placing the burden on the Mohantys to make the decision as to whether or not the Mohantys were financially qualified to purchase the home. However, the terms of the contract itself place this burden on Goodman Homes. *See* Goodman Homes Sales Agreement, para. 4.

Clearly, it was Goodman Homes' duty to ask for and to collect the pertinent financial data on the Mohantys and to determine whether or not the Mohantys were financially capable of settling. By the terms of the contract, the Mohantys were not required to disclose from where the funds to purchase the home would come unless and until that information was requested by Goodman Homes or Goodman Homes' lender. Goodman Homes has made no allegation that it requested and received erroneous financial information or statements from the Mohantys. In fact, nothing has been presented to indicate from what financial information Goodman Homes drew the conclusion that the Mohantys could come up with the funds to settle other than alleged oral statements made by the Mohantys themselves. In addition, Goodman Homes knew at least as of August, 1990, that the Mohantys intended to finance the new home from the proceeds of the sale of their existing home. Goodman Homes, by the terms of the contract, could have cancelled the contract at that time if it felt that the financing arrangement was unsatisfactory. Thus, Goodman Homes cannot be heard to say that it detrimentally relied on any misrepresentations by the Mohantys. It was up to Goodman Homes to request and research the necessary data and to decide, based on that data, whether or not the Mohantys could obtain adequate financing.

Therefore, the Court concludes that Mohantys timely raised the § 11–2.3 voidance and are not estopped from so doing. Judgment is granted to the Mohantys for $134,088.54 and costs and also in their favor on Goodman Homes' counterclaim.